IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-00533-CMA-SKC

RAKESH MAHAJAN,

    Plaintiff,

v.

BOXCAR HOLDINGS, LLC, a Colorado LLC,
NICK GULOTTA, and
CARRIE GULOTTA,

    Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
_____

This matter is before the Court upon Plaintiff Rakesh Mahajan's Motion for Summary Judgment. (Doc. # 49.) The Court, having reviewed all filings, exhibits, and relevant case law, and being fully advised in the premises, grants Plaintiff's Motion for Summary Judgment.

## I.    BACKGROUND

Plaintiff is an individual who has had dealings with a number of small businesses. (Doc. # 52 at 2.) Defendant Boxcar Holdings, LLC ("Defendant Boxcar"), is a Colorado limited liability company in the asset disposal business; it "purchases unused or unwanted assets from companies, mostly automobiles, and sells them to auctions and dealers." (*Id.*) Critical to Defendant Boxcar's business is "access to capital to purchase large quantities of automobiles," and its primary challenge is "reducing the cost of

borrowing capital." (*Id.*) Defendant Nick Gulotta is the sole member and owner of Defendant Boxcar. (Doc. # 8 at 1.) He and his spouse, Defendant Carrie Gulotta (together, the "Gulotta Defendants"), are domiciled in Colorado. (*Id.* at 2.)

In late 2016, Plaintiff and Defendant Nick Gulotta began discussing ways in which Plaintiff could be involved in Defendant Boxcar's business. (Doc. # 52 at 2.)

On January 6, 2017, Plaintiff and Defendant Boxcar executed a Secured Promissory Note (the "First Note"), under which Plaintiff loaned Defendant Boxcar $600,000.00. (Doc. # 8-1.) The First Note required Defendant Boxcar to repay the $600,000.00 loan, with 17.5% interest per annum, by April 10, 2017. (*Id.* at 1.) The First Note is secured by "a first priority security interest on all [Defendant Boxcar's] vehicles in inventory . . . [and] in all of the assets of [Defendant Boxcar]." (*Id.* at 3.) The First Note provides that Plaintiff is entitled to recover "costs of suit and reasonable attorney fees" in pursuing a claim against Defendant Boxcar to recover amounts owed under the note. (*Id.*) It also states that it is to be construed according to the laws of Colorado. (*Id.* at 4.)

Also on January 6, 2017, contemporaneously with the parties' execution of the First Note, Plaintiff and Defendant Boxcar entered into a Security Agreement. (Doc. # 8-2.) Pursuant to the Security Agreement, Defendant Boxcar granted Plaintiff a "continuing security interest" in "all machinery and equipment," "all inventory (including vehicles)," "all accounts, contract rights, . . . investment property and general intangibles," and "all deposit accounts." (*Id.* at 1.) The Security Agreement also requires Defendant Boxcar to reimburse Plaintiff "for all attorney fees, legal expenses

2

and other expenses" Plaintiff incurs in protecting and enforcing his rights under the Security Agreement.  (*Id.* at 6.)

On the same day, January 6, 2017, Plaintiff and the Gulotta Defendants executed a Guaranty, under which the Gulotta Defendants agreed to "jointly and severally, absolutely, unconditionally and irrevocably guarantee prompt payment when due and at all times in the future of the indebtedness evidenced by [the First Note], in the original principal amount of $600,000.00."  (Doc. # 8-3 at 1.)  The Guaranty allows Plaintiff to recover attorney fees and litigation costs.  (*Id.*)

On February 13, 2017, Plaintiff and Defendant Boxcar executed a second Secured Promissory Note (the "Second Note"), in which Plaintiff loaned Defendant Boxcar an additional $200,000.00.  (Doc. # 8-4.)  Like the First Note, it required Defendant Boxcar to repay the $200,000.00 loan, with 17.5% interest per annum, by April 10, 2017.  (*Id.*)  The Second Note is virtually identical to the First Note in all material respects, including terms regarding an event of default, acceleration, governing law, and attorney fees and costs.  *See generally* (*id.*; Doc. # 8 at 7.)

On July 14, 2017, Plaintiff and Defendant Boxcar executed a third Secured Promissory Note (the "Third Note") pursuant to which Plaintiff loaned Defendant Boxcar another $200,000.00.  (Doc. # 8-5.)  The Third Note required Defendant Boxcar to repay the $200,000.00 loan, with 17.5% interest per annum, by September 14, 2017.  (*Id.*)  The Third Note is virtually identical to the First and Second Notes in all other regards. *See generally* (*id.*; Doc. # 8 at 8.)

Between January 2017 and August 2017, Plaintiff and Defendant Nick Gulotta contemplated Plaintiff making an equity investment in Defendant Boxcar by converting the Notes to a membership interest in the company. (Doc. # 52 at 3.) By August 9, 2017, Plaintiff and Defendant Nick Gulotta had drawn up documents to formalize Plaintiff's equity investment in Defendant Boxcar. (*Id.* at 6; Doc. # 52-1 at 106–08.) These documents included a Membership Interest Purchase Agreement, a Release of the Personal Guaranty, a Termination Agreement (regarding the Notes), and an Operating Agreement. (Doc. # 52-1 at 41–89, 106–08.) The parties never executed these documents. On or about August 14, 2017, Plaintiff informed Defendant Nick Gulotta that he had made a final decision not to make an equity investment in Defendant Boxcar. (Doc. # 52 at 7.)

Defendant Boxcar did not repay the amounts due under the Notes by the maturity dates set forth therein—April 10, 2017, for the First Note and Second Note, and September 14, 2017, for the Third Note. (Doc. # 49 at 7.)

However, between February 2017 and October 2017, Defendant Boxcar "made monthly interest payments under the First Note, the Second Note, and the Third Note in an amount totaling $105,126.26." (Doc. # 8 at 8.) At some point in that time span, the parties came to an understanding that "[d]espite the earlier maturity dates set forth in the [N]otes," Defendant Boxcar would "continue to make monthly interest payments (at 15% per annum rate) under each of the [N]otes, and Boxcar would pay the remaining balance due under the [N]otes on agreed-upon dates in 2018, including the principal and interest (at a 2.5% per annum rate)." (*Id.*) It is undisputed that since November

4

2017, Defendant Boxcar has not made any payments due to Plaintiff under the Notes. (Doc. # 49 at 7.)

On March 5, 2018, Plaintiff initiated this action against Defendants. (Doc. # 1.) Plaintiff asserts two causes of action: (1) breach of contract of the three Notes against Defendant Boxcar; and (2) breach of contract of the Guaranty against the Gulotta Defendants. (Doc. # 8 at 10–12.) He seeks damages and recovery of his attorney fees and costs. (*Id.* at 12.)

Defendant Boxcar and Defendant Carrie Gulotta assert eight affirmative defenses in their joint Answer:

1. Failure to state a claim upon which relief may be granted;
2. The doctrine of unclean hands;
3. Promissory estoppel;
4. "[P]revention of performance;"
5. "[W]aiver of enforcement of terms under the [N]otes, [S]ecurity [A]greement, and personal [G]uaranty;"
6. Failure to mitigate damages;
7. Plaintiff's "material representations and assurances upon which [Defendant Nick Gulotta] reasonably and justifiably relied to Defendants' collective detriment;" and
8. Plaintiff's "prior material breaches and failures to perform under an agreement with Defendants that he would purchase a fifty percent membership interest in Defendant Boxcar and as consideration for said purchase[,] he would cancel the [N]otes, [S]ecurity [A]greement, and personal [G]uaranty."

(Doc. # 45 at 2.) Defendant Nick Gulotta asserts the same eight affirmative defenses in his Answer. (Doc. # 47 at 3–4.)

On August 15, 2018, Plaintiff filed the Motion for Summary Judgment presently before the Court. (Doc. # 49.) Plaintiff requests summary judgment on both breach of contract claims. (*Id.* at 1.) As to his first claim for breach of contract of the Notes against Defendant Boxcar, Plaintiff requests that the Court "enter judgment against [Defendant] Boxcar for $1,305,575.90, which represents the unpaid principal, judgment, interest, and late fees currently due under the [N]otes." (*Id.*) As to his breach of contract of the Guaranty against the Gulotta Defendants, Plaintiff requests that the Court "enter judgment against them for $783,900.81, which represents that unpaid principal, interest, and late fees currently due under the [F]irst [N]ote." (*Id.* at 2.) Plaintiff also requests an award of his attorney fees and litigation expenses incurred in enforcing the Notes and the Guaranty, stating that he is entitled to recover such fees and costs "under the plain terms of all of the parties' agreements." (*Id.*)

Defendants jointly filed a Response to Plaintiff's summary judgment motion on September 10, 2018. (Doc. # 52.) Defendants argue that summary judgment is inappropriate because there are genuine disputes of material fact with respect to their affirmative defenses of "breach of contract, estoppel, and failure to mitigate damages." (*Id.* at 1.)

Plaintiff replied in support of his Motion for Summary Judgment on September 24, 2018, asserting that "[t]he record . . . forecloses the possibility that Defendants could prove any of these defenses at trial." (Doc. # 53 at 2.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Stated differently, the party must provide "significantly probative evidence" that would support a verdict in her favor.

*Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III.    DISCUSSION

Plaintiff argues that he is entitled to summary judgment on its breach of contract claims because "[t]here is no genuine dispute of material fact as to any of the legal elements" of his claims.[1] (Doc. # 49 at 2.) Defendants do not argue otherwise in their Response, *see* (Doc. # 52), and accordingly, the burden shifts to Defendants to set forth specific facts showing genuine issues for trial, *see Anderson*, 477 U.S. at 256. Defendants attempt to do so by asserting various affirmative defenses which, if established, would reduce or eliminate Plaintiff's damages. (*Id.*) *See Bank of Choice v. Crossroads Commercial Ctr., Ltd., LLLP*, No. 2010CV5138, 2011 WL 4005096, *2 (D. Colo. Aug. 31, 2011) ("If the elements of a breach of contract claim are proven by a preponderance of the evidence, an affirmative defense may nonetheless invalidate the agreement at issue.") (citing CJI-Civ. 4th 30:1 (2010)). Thus, the question for this Court is whether Defendants have provided significantly probative evidence regarding their affirmative defenses that would support a verdict in their favor. *See Jaramillo*, 680 F.3d

---

[1] The elements of a breach of contract claim brought under Colorado law are: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform by the contract by the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (collecting cases). "The 'performance' element in a breach of contract action means 'substantial' performance." *Id.* Substantial performance occurs when, "although the conditions of the contract have been deviated from in trifling particulars not materially detracting from the benefit of the other party would derive from literal performance, the defendant has received substantially the benefit he expected, and is, therefore, bound to pay." *Id.* (quoting *Newcomb v. Schaeffler*, 279 P.2d 409, 412 (Colo. 1955)).

8

at 1269. Defendants limit their arguments to three of the affirmative defenses they pleaded in their Answer: "breach of contract, estoppel, and failure to mitigate damages." (Doc. # 52-1.) The Court addresses each in turn.

**A.     BREACH OF CONTRACT AFFIRMATIVE DEFENSE**

Defendants contend that they and Plaintiff entered into an agreement pursuant to which Plaintiff would become an equity investor in Defendant Boxcar and would "cancel the [N]otes, release [the Gulotta Defendants'] personal [G]uaranty on the [F]irst [N]ote, and . . . terminate his security interest in Boxcar's assets." (Doc. # 52 at 2–7.) Defendants cite communications between Defendant Nick Gulotta and Plaintiff concerning iterations of a drafted Membership Interest Purchase Agreement, a drafted Release of the Personal Guaranty, a drafted Termination Agreement (regarding the Notes), and a drafted Operating Agreement as evidence of such an agreement. (*Id.*) They contend that "[t]he affirmative defense of breach of contract may establish a defense to the enforcement of a promissory note." (*Id.* at 11.)

However, Defendants misunderstand the affirmative defense of breach of contract. Assuming *arguendo* that the parties had an enforceable agreement concerning Plaintiff making an equity investment in Defendant Boxcar and releasing Defendants of their obligations under the Notes and Guaranty, Plaintiff's breach of that agreement would not be a defense to Plaintiff's breach of contract claims under the Notes and Guaranty. It would rather be a counterclaim for Defendants to allege against Plaintiff.[2]  *See Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238,

---

[2] Defendants have not alleged any counterclaims against Defendant.  *See* (Doc. ## 45, 47.)

9

1246 (10th Cir. 1990) ("A breach of a separate oral agreement would only give rise to an action for breach of the distinct oral agreement."). The two cases Defendants cite in support of their breach of contract affirmative defense betray Defendants' misunderstanding. Both cases, *Alpine Bank v. Hubbell*, 506 F. Supp. 2d 388, 411 (D. Colo. 2007), *vacated and superseded on rehearing*, 555 F.3d 1097 (10th Cir. 2009), and *Gould Inc., v. Bell*, 900 F.2d 262, 1990 WL 43002, *7 (9th Cir. Apr. 6, 1990), involved alleged, prior breaches of the **same** agreement under which the plaintiff brought the claims—not breaches of entirely separate agreements, as Defendants allege here.

Given Defendants' flawed understanding of the affirmative defense of breach of contract, their assertion of it (and their related allegation of an oral agreement between the parties concerning an equitable investment by and amounts owed to Plaintiff) does not amount to "significantly probative evidence . . . that would support a verdict in their favor." *See Jaramillo*, 680 F.3d at 1269.

**B.     ESTOPPEL AFFIRMATIVE DEFENSE**

In their seventh affirmative defense, Defendants argue that Plaintiff made "material representations and assurances upon which [Defendant Nick Gulotta] reasonably and justifiably relied"—in short, they assert estoppel by acquiescence. (Doc. # 45 at 2; Doc. # 47 at 4; Doc. # 52 at 14.) Plaintiff, they allege, "consented to delayed interest payments and repayment of the principal amounts until an unspecified future time," "never communicated an event of default to Defendants," "never communicated a deadline for repayment of the principal amounts after maturity," and

"habitually accepted late interest-only monthly payments on the [F]irst and [S]econd Notes."  (Doc. # 52 at 14.)  They also contend that "Plaintiff never gave notice to Defendants that he would strictly enforce the terms of the [N]otes in the future."  (*Id.* at 15.)  Plaintiff thereby "engaged in a pattern of conduct which suggested he would not declare a default under the [N]otes," Defendants argue, and "therefore is now estopped from doing so."  (*Id.* at 14.)

Like other states, Colorado recognizes the defense of estoppel by acquiescence.  *See Chicago, R.I. & P. Ry. Co. v. Hayes*, 113 P.3d 315, 319 (Colo. 1910); *Sullivan v. Indus. Claim Appeals Office*, 796 P.2d 31, 34 (Colo. App. 1990) (Ruland, J., dissenting).  "This defense requires the one against whom it is asserted to have known of, or been able to ascertain, the facts from which the estoppel arose, but nevertheless acquiesced without asserting his or her rights."  *Mile High Indus. v. Cohen*, 222 F.3d 845, 858 (10th Cir. 2000) (collecting cases).  It "focuses on the party against whom the defense is asserted to see if that party waived its right."  *Id.*

The Court concludes that Defendants have **not** set forth specific facts from which a rational finder of fact could conclude that Plaintiff acquiesced to Defendants' non-compliance with the terms of the Notes and the Guaranty.  Though the parties reached an understanding at some point in 2017 that "[Defendant] Boxcar would continue to make [only] monthly interest payments under each of the notes, and Boxcar would pay the remaining balance due under the notes on agreed-upon dates in 2018," *see* (Doc. # 8 at 8), the parties never made a specific plan to amend the Notes or the Guaranty.  Colorado courts do not allow debtors to rely on "vague," "noncommittal," or "indefinite"

11

statements by a creditor to establish an equitable estoppel defense.  *See Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 522 (Colo. App. 2006) (quoting *Thurman v. Tafoya*, 895 P.2d 1050, 1058 (Colo. 1995); *Bridges v. Reliance Trust Co.*, 422 S.E. 2d 277, 279 (Ga. App. 1992)).

Moreover, Plaintiff unmistakably withdrew his consent to any modification of payment terms in November 2017, when Defendant Boxcar ceased paying any amounts due under the Notes.  *See* (Doc. # 49 at 7.)  Plaintiff repeatedly sent Defendant Nick Gulotta text messages and emails to alert him that Defendant Boxcar's failure to make many months' worth of payments was "in complete violation of [their] agreements," to demand Defendants make payments, and to warn Defendants that they were leaving him "with no choice but to go to [his] lawyers." (Doc. # 49-1 at 37–40.)  Evidence of such communications directly contradicts Defendants' argument that Plaintiff "engaged in a pattern of conduct which suggested he would not declare a default under the [N]otes,"  *See* (*Doc. # 52* at 14.)

For these reasons, Defendants have failed to introduce significantly probative evidence that could support a verdict in their favor on an estoppel affirmative defense.

**C.      FAILURE TO MITIGATE DAMAGES AFFIRMATIVE DEFENSE**

Defendants' sixth affirmative defense is that Plaintiff has failed to mitigate his damages, *see* (Doc. # 45 at 2; Doc. # 47 at 4), and in response to Plaintiff's Motion for Summary Judgment, they argue that a "genuine fact dispute" over this affirmative defense precludes summary judgment, (Doc. # 52 at 15–17).  Defendants reason that because "under the [S]ecurity [A]greement, the [N]otes are secured by the assets of

Boxcar, . . . primarily automobiles," Plaintiff "would benefit by foreclosing on the vehicles under the [S]ecurity [A]greement" "in lieu of repayment" but "has taken no action" to do so. (*Id.* at 16.)  Defendants also allege that Plaintiff "insisted" that Defendant Boxcar "repay a million dollar note to Bill Fisher, a former lender of Boxcar, by the end of 2017 and before Boxcar repaid Plaintiff." (*Id.*)  "But for Plaintiff's insistence," Defendants argue, Defendant "Boxcar could have repaid Plaintiff instead of Fisher." (*Id.*)

Defendants' argument that Plaintiff failed to mitigate damages by not foreclosing on Defendant Boxcar's asserts is contrary to case law.  Under Colorado law, a creditor "is not required to first exhaust the collateral" before "proceed[ing] in a judicial action." *Alamosa Nat'l Bank v. San Luis Valley Grain Growers, Inc.*, 756 P.2d 1022, 1025 (Colo. App. 1988) (citing *Native Alaskan Reclamation & Pest Control, Inc. v. United Bank Alaska*, 685 P.2d 1211 (Alaska 1984)); *see also Silverburg v. Colantuno*, 991 P.2d 280, 289 (Colo. App. 1998) ("a secured party is not required to dispose of collateral upon default.  Because its remedies are cumulative, it can proceed under the UCC or pursue a judgment against the debtor under a promissory note or contract.").  Additionally, the Security Agreement itself expressly provides that Plaintiff has "all rights and remedies of a secured party under applicable laws" and that Plaintiff's rights and remedies "shall be cumulative and may be exercised from time to time." (Doc. # 49-1 at 12–13.) Defendant's affirmative defense of failure to mitigate damages is consequently not viable.

13

**D.     SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF**

Defendants do not argue contest Plaintiff's assertion that there are no genuine disputes of material fact as to the elements of his two claims, as the Court explained in Section III. And for the reasons the Court just explicated, Defendants have not satisfied their burden to show genuine issues for trial regarding their affirmative defenses of breach of contract, estoppel by acquiescence, and failure to mitigate damages. The Court is therefore satisfied that there is no genuine dispute as to any material fact and Plaintiff is entitled to judgment as a matter of law on both of his claims for breach of contract.

**E.     PLAINTIFF'S DAMAGES**

Where the plaintiff prevails on his or her breach of contract claim, the plaintiff "may recover the amount of damages that are required to place him in the same position he would have occupied had the breach not occurred." *Pomeranz v. McDonald's Corp.*, 843 P.2d 1378, 1381 (Colo. 1993).

Plaintiff first contends that his damages for Defendant Boxcar's breach of contract of the three Notes (Claim 1) were, as of August 10, 2018, "equal to $1,305,575.90." (Doc. # 49 at 13.) Specifically, he explains that Defendant Boxcar owes him $783,900.81 on the First Note, which is the sum of the loan principal; interest at 15% until November 30, 2017; interest at 20% from December 1, 2017, to August 10, 2018; and interest at 2.5% at maturity minus the payment Defendant Boxcar made ($75,700.00), subject to a 10% late fee. (Doc. # 49-1 at 2.) Using the same

calculations, Plaintiff asserts that Defendant Boxcar owes him $261,297.94 on the Second Note and $260,0377.16 on the Third Note.  (*Id.*)

Second, Plaintiff alleges that his damages for the Gulotta Defendants' breach of contract of the Guaranty (Claim 2) were, as of August 10, 2018, $783,900.81, the balance due under the First Note.  (Doc. # 49 at 14–15.)

And third, Plaintiff also seeks attorney fees and litigation costs incurred in connection with his claims.  He has not yet identified a specific amount of attorney fees and litigation expenses he has incurred to date and has not yet explained why that amount is reasonable under the circumstances.  (*Id.* at 15–16.)

Because it has been nearly five months since Plaintiff last calculated the damages he is due under the three Notes and the Guaranty, the Court orders Plaintiff to submit an updated affidavit setting forth all amounts due in principal and interest under the First Note and Guaranty, under the Second Note, and under the Third Note.  *See Alpine Bank v. Hubbell*, 506 F. Supp. 2d at 411.  Plaintiff shall also submit its Motion for Attorney Fees and Costs, in compliance with CMA Civ. Practice Standard 7.1F(b).

## IV.    CONCLUSION

Accordingly, it is ORDERED that Plaintiff's Motion for Summary Judgment (Doc. # 49) is GRANTED.  It is

FURTHER ORDERED that, within fourteen days of the issuance of this Order, Plaintiff shall submit an updated affidavit as to principal and interest due so that this Court can enter judgment in favor of Plaintiff on the three Notes and the Guaranty.  It is

FURTHER ORDERED that Defendants shall have seven days from the date Plaintiff files his updated affidavit to file a response, if any, to the affidavit. It is

FURTHER ORDERED that, within thirty days of the issuance of this Order, Plaintiff shall file a motion for attorney fees and costs that complies with this Court's Practice Standards. It is

FURTHER ORDERED that the Final Trial Preparation Conference set for February 21, 2019, and the bench trial set for March 11, 2019 are VACATED.

DATED: January 31, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge